(34 Misc. Rep. 447.)

## In re COWLES.

(Supreme Court, Special Term, Erie County. March, 1901.)

1. LIQUOR TAX LAW—CONSENT OF OWNER OF LEASED PREMISES—FORM—JOINT OWNERS.

The consent of an owner of real estate to traffic in liquors on his property is not a conveyance or lease of real estate, nor a contract for a lease or sale of any interest therein, and hence, where the consent of several joint owners is given by one of them authorized by the others, such authorization need not be in writing.

2. SAME—UNLIMITED CONSENT—SALE OF PREMISES—NEW CONSENT.

Under Laws 1897, c. 312 (Liquor Tax Law), providing that when a property owner has consented to the use of his premises for trafficking in liquor, with no limitation as to time, no other consent shall be required so long as such premises are continuously occupied for such traffic, no new consent need be obtained from the vendee where leased premises for which consent of indefinite duration has been obtained are sold subject to the terms of the lease.

Application by Milton H. Cowles for an order revoking a liquor tax certificate issued to Michael F. Bergin. Denied.

H. C. Spurr, for petitioner.
Shire & Jellinek, for respondent.

KRUSE, J. In May, 1898, Thomas R. Bullymore, acting for himself and his two associate joint owners of certain premises situate in the city of Buffalo, made a lease thereof to the respondent, Michael F. Bergin, for the term ending May 1, 1903, and about the same time, acting under like authority, consented, in writing, duly acknowledged, to the traffic in liquors on said premises, without limitation of time. This consent was filed July 2, 1898, with the respondent's application to traffic in liquor at these premises, and a liquor tax certificate was issued to him in accordance with the application, and thereafter a like certificate was issued to him on the 1st day of May in each year, based upon the original consent so filed on the 2d day of July, 1898, and the business has been carried on continuously. The premises were sold by the three owners to Charles A. Weed, the present owner, in February, 1900, at which time the respondent, Michael F. Bergin, was in possession thereof, carrying on the business of trafficking in liquor under the liquor tax certificate so issued to him on the 1st day of May preceding, and the deed of conveyance was expressly made subject to the lease under which Bergin was then occupying said premises. Notwithstanding the change in ownership of the premises in question in February, 1900, the liquor tax certificate was issued in May, 1900, based upon the original consent made in 1898. The petitioner contends that this original consent became ineffectual after a change in ownership of the premises, and that the consent was insufficient even as regards the original owners, it having been made by but one of them, although he was authorized to do so for all of the owners; contending that the authority to make such a consent for the other two original owners not joining therein should be in writing, and in such form as would authorize the making of a contract for the sale of real estate.

1. As regards the last ground, it is only necessary to say that the liquor tax law does not so require in express terms, and such a consent is neither a conveyance or lease of real estate nor a contract for a lease or sale of any interest therein; and it appears that Thomas R. Bullymore not only had charge of this property, but that the other two owners recognized the lease; that the rent was accepted by the owners, and expressly recognized by the present owner, as well as the three original owners, in the deed of conveyance made by them to the present owner.

2. The other objection urged against the validity of this liquor tax certificate—that the purchaser of these premises, who was the owner on the 1st day of May, 1900, when the application was made, and the liquor tax certificate issued to the respondent, did not consent thereto—is based upon subdivision 6 of section 17 of the liquor tax law, which provides that simultaneously with the statement required to be made for the application there shall also be filed a consent, in writing, by the owner of the premises, or his duly-authorized agent, that such traffic in liquors be so carried on in said premises. It is contended by the petitioner that this provision refers to the ownership at the time of the making of the application for the liquor tax certificate and the issuing thereof. Such claim undoubtedly would be tenable if that provision stood alone, and was absolute and unqualified; but in 1897 an amendment was interpolated in the section of which this subdivision relating to the consent of the owner is a part, which is as follows:

"Whenever the consent required by this section shall have been obtained and filed as herein provided. unless the same be given for a limited term, no further or other consent for trafficking in liquor on such premises shall be required so long as such premises shall be continuously occupied for such traffic." Subdivision 8, § 17, c. 312, Laws 1897.

This amendment, I think, was intended to effect a radical change in the nature of these consents. Theretofore it had. been necessary to obtain the consents annually, making the continuance of the business dependent upon the uncertainty of obtaining the necessary consents. The purpose of this amendment seems to have been to overcome this condition, and put a place for which the required consents have been once obtained upon the same basis as regards these consents as a place where the traffic was lawfully carried on at the time the act took effect, unless such consents are given for a limited term. The legislature recognized, in the original liquor tax law, when it was enacted, a right to some extent continuing beyond the term for which the license had been granted under the license law, which was superseded by the present tax law. The restrictions regarding the traffic in liquor in proximity to churches, schools, and dwelling houses do not apply to places where the traffic was carried on lawfully when the liquor tax law took effect; nor is it necessary to obtain the consent of the owners of premises where such traffic was lawfully carried on at that time; and so, in harmony with this policy, the legislature has provided that whenever these consents have been once obtained and filed, unless given for a limited term, no other or further consents are required. It is true that circumstances might arise, and

conditions change, making it desirable to require new consents; but the same reason applies with equal force to places lawfully existing when the act took effect, and to which this requirement concededly does not apply. I am of the opinion that the consent of the original owners, permitting the traffic in liquor by their tenant upon the premises in question, not being given for a limited term, once made and filed as required by the liquor tax law, remains effective so long as such premises are continuously occupied by him for such traffic, not-withstanding a change in the ownership thereof. The views which I have expressed lead to the conclusion that the application to cancel and revoke the liquor tax certificate should be denied.

Application to revoke the liquor tax certificate is denied, with $50 costs and disbursements.